United States District Court
District Of Maine

| | |
|---|---|
| AMANDA J. QUILLEN,<br><br>    Plaintiff,<br><br>  v.<br><br>TOWN OF OXFORD, RICKIE JACK, JOSEPH CORREIA, and MICHAEL RIOUX,<br><br>    Defendants. | Docket No.: |

## Complaint and Demand for Jury Trial

Amanda J. Quillen complains against the Town of Oxford, Rickie Jack, Joseph Correia, and Michael Rioux as follows:

## Summary of Civil Rights Case for Constitutional Violations

1.    Plaintiff Amanda Quillen brings this case against Defendants for violating her rights under the United States and Maine Constitutions, including by subjecting her to excessive force and retaliating against her for protected speech and exercising her right to petition the government. Much of the incident giving rise to this civil rights complaint was captured on video.

1

2.    On April 24, 2023, Ms. Quillen went to the Oxford Police Department to report threatening messages she had received from a family member of Defendant Rickie Jack, the police chief for the Town of Oxford.

3.    Instead of processing the complaint, Chief Jack became defensive, raised his voice, and insisted that Ms. Quillen leave the police station. After communicating with Ms. Quillen on video for less than one minute, Chief Jack said, "one more time, leave or [Defendant Michael Rioux is] taking you to jail for me."

4.    Within two seconds of giving this order, and before Ms. Quillen had a chance to leave or otherwise respond, Chief Jack lunged forward and aggressively grabbed Ms. Quillen, threw her to the ground, and held her there with the help of Defendants Michael Rioux and Joseph Correia. During the altercation, Chief Jack kneeled on Ms. Quillen's head. The video shows Ms. Quillen screaming from shock, fear, and pain.

5.    Ms. Quillen was initially arrested for criminal trespass, refusing to submit to arrest, and disorderly conduct, but the charges were subsequently dismissed.

6.    As a result of these violations of her rights under the United States and Maine Constitutions, Ms. Quillen is seeking all available remedies, including compensatory damages, punitive damages, and attorney's fees and expenses.

## Parties

7.      Plaintiff Amanda J. Quillen resides in the Town of Oxford, Oxford County, Maine.

8.      Defendant Rickie Jack is Chief of the Oxford Police Department. Chief Jack was acting under color of state law at all relevant times. He is sued in his individual capacity.

9.      Defendant Joseph Correia is a Town of Oxford police officer who held the rank of Sergeant on April 24, 2023. Officer Correia was acting under color of state law at all relevant times. He is sued in his individual capacity.

10.     Defendant Michael Rioux is a Town of Oxford police officer. Officer Rioux was acting under color of state law at all relevant times. He is sued in his individual capacity.

11.     Defendant Town of Oxford is a local government entity with offices at 127 Pottle Road, Oxford, ME 04270. The Town of Oxford creates law enforcement policy and provides funding, training, prosecutorial administration, and other resources to the Oxford Police Department.

## Jury Trial Demand

12.     Under Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury on all issues triable to a jury.

## Jurisdiction and Venue

13.     This action arises under 42 U.S.C. § 1983.

14.     This Court has subject matter jurisdiction over Ms. Quillen's claims under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 1367 (supplemental).

15.     Venue is proper in the District of Maine under 28 U.S.C. § 1391(e)(3) because Ms. Quillen resides in Maine. For purposes of Rule 3(h) of the Local Rules of this Court, venue is proper in Oxford County.

## Factual Allegations

### Ms. Quillen Went to the Oxford Police Department to Report Threatening Messages She Received from Chief Jack's Family Member

16.     In the spring of 2023, Ms. Quillen received threatening messages from a family member of Chief Jack.

17.     The messages related to a romantic relationship between Ms. Quillen's boyfriend and a woman who will be referred to as KG. KG was friends with both Candice Jack—Chief Jack's wife—and Kaylin Bashaw—Chief Jack's stepdaughter.

18.     After the romantic relationship ended, Kaylin Bashaw sent unkind Facebook messages to a friend of Ms. Quillen's. As a result, Ms. Quillen sent a Facebook message to Ms. Bashaw on April 23, 2023, requesting that she communicate with her directly. Ms. Quillen and Ms.

Bashaw got into an argument via Facebook Messenger.

19.    Ms. Bashaw told Ms. Quillen that "my mother Candice [J]ack . . . will kick the fuck out of you" if Ms. Quillen "put a hand on" KG.

20.    Ms. Bashaw explained to Ms. Quillen, "[m]y mother tryed [sic] to beat you up once before."

21.    Ms. Bashaw also told Ms. Quillen that she would "kick the fuck out of [Ms. Quillen]" herself if she were in town.

22.    Ms. Quillen called the Oxford Police Department and spoke with an administrative assistant. Ms. Quillen explained that she had received threats from Ms. Bashaw and requested a call back from Chief Jack. Chief Jack did not return her call.

23.    The next day, April 24, 2023, Detective Alan Coffin called Ms. Quillen at Chief Jack's request. Detective Coffin works for the Town of Paris Police Department. KG works in Paris.

24.    Ms. Quillen told Detective Coffin that she did not have a complaint about KG, and she had no complaint to report to the Paris Police Department. Instead, Ms. Quillen explained that she had a complaint about Ms. Bashaw. Neither Ms. Quillen nor Ms. Bashaw lives in the Town of Paris.

25.    Ms. Quillen told Detective Coffin that she wanted to speak with Chief Jack about the threats from his stepdaughter, Kaylin Bashaw. Detective Coffin suggested that Ms. Quillen go to the Oxford police station

5

herself to speak with Chief Jack.

26.    Later in the afternoon of April 24, 2023, Ms. Quillen went to the Oxford Police Department's office, where she planned to speak to Chief Jack about the threats from Ms. Bashaw.

### Instead of Processing the Complaint, Police Officers Grabbed Ms. Quillen, Threw Her to the Ground, and Kneeled on Her Head

27.    When she arrived at the Oxford Police Department, Ms. Quillen explained to an administrative assistant that Chief Jack had not called her back.

28.    Chief Jack knew that Ms. Quillen was there to discuss a situation involving KG and Chief Jack's family members. Indeed, Chief Jack later explained in his police report that his wife knew KG and that Ms. Quillen had been communicating with Ms. Bashaw via Facebook.

29.    Chief Jack stood up from his desk and walked toward Ms. Quillen. Ms. Quillen repeated that Chief Jack had not returned her call. Chief Jack said that he had Detective Coffin call Ms. Quillen, and Detective Coffin reported that Ms. Quillen had no complaint.

30.    Ms. Quillen began to explain that she did not have a complaint about KG, but she did have a complaint about Ms. Bashaw's threatening messages.

31.    Chief Jack quickly became defensive and tried to cut Ms. Quillen

6

off. He swung an office door out toward Ms. Quillen, came into the lobby, and started raising his voice at Ms. Quillen.

32.    Defendant Sergeant Joseph Correia started recording a video; this is where the camera footage begins. Sergeant Correia walked to the lobby area.

33.    As depicted in the video, Chief Jack was speaking loudly to Ms. Quillen in the lobby. Ms. Quillen was speaking sternly, but she was not yelling. Defendant Officer Michael Rioux was standing nearby.



34.    The conversation, as captured on the video, was as follows:

Ms. Quillen: "That's what I told you."

Chief Jack: "You're not going to tell me anything."

Ms. Quillen: "Then don't ask me."

Chief Jack: "Then get out."

Ms. Quillen: "Who's your boss?"

Chief Jack: "Get out."

Ms. Quillen: "Who's your boss?"

Chief Jack: "Get out, or you're going to jail. Do you understand?"

Ms. Quillen: "For what?"

Chief Jack: "Because you're being disorderly here."

Ms. Quillen: "No I'm not, you asked me what he said."

Chief Jack: "You are. I'm telling you leave now."

Ms. Quillen: "Where's your cameras? You asked me—"

35.     At that point, Chief Jack said, "one more time, leave or he's taking you to jail for me," pointing toward the door and then gesturing toward Officer Rioux.

36.     Ms. Quillen turned to look at Officer Rioux.



8

37.    Within two seconds of Chief Jack's warning, and before Ms. Quillen could respond, Chief Jack lunged toward Ms. Quillen and grabbed her arm.



38.    Chief Jack forced Ms. Quillen's arms behind her back.

39.    As shown in the video, Ms. Quillen was visibly shocked and distressed.



9

40.    Chief Jack and Officer Rioux forced Ms. Quillen to the ground in the police station lobby.



41.    The video does not show Ms. Quillen or the Defendants during the entirety of the physical altercation, but the audio depicts Ms. Quillen yelling in pain and asking the Defendants what they were doing.

42.    After Chief Jack forced Ms. Quillen to the ground, he placed his knee on her temple.

43.    Ms. Quillen can be heard repeatedly screaming in pain, saying "ow," "get off my head," and "I didn't do anything."

44.    Chief Jack callously dismissed Ms. Quillen's distress by saying "you're fine."

45.    One or more Defendants placed Ms. Quillen in tight handcuffs.

10

46.    The handcuffs cut into Ms. Quillen's wrists, resulting in bruising and swelling.

47.    When Ms. Quillen reappears in the video, she is shown lying face down on the floor of the police station. Sergeant Correia is holding her on the ground. Chief Jack is at first holding her on the ground and then standing over her.



48.    Sergeant Correia stood Ms. Quillen up.

49.    As depicted in the video, Ms. Quillen appears disheveled and extremely distressed after the Defendants' unjustified and excessive use of force against her.



50.    Chief Jack told Ms. Quillen, "you're not going to talk to me like that."

51.    Sergeant Correia and Officer Rioux pushed Ms. Quillen through the office door. Sergeant Correia forced Ms. Quillen outside and through the parking lot.



12

52.    As Defendant Correia pushed Ms. Quillen, Officer Rioux said, "I don't know who you think you are, talking to the wrong people at the department."



53.    Police officers transported Ms. Quillen to the Oxford County Jail.

54.    When Ms. Quillen arrived at the jail, her entire arm was numb. Her wrists were also swollen from the tight handcuffs. After the assault, Ms. Quillen experienced pain in her wrist, hip, and head.

55.    Ms. Quillen was charged with criminal trespass, refusing to submit to arrest, and disorderly conduct. The charges were Class E crimes, which is the least severe category of crimes under Maine law.

56.    Ms. Quillen paid about $160 to bail herself out. Ms. Quillen had to wait at the jail for several hours before she could leave.

57. The police department had Ms. Quillen's car towed from the parking lot, and Ms. Quillen paid about $175 to regain access to her car.

58. Ms. Quillen was subjected to conditions of release, including limitations on her ability to return to the Oxford Police Department.

59. Ms. Quillen had to pay to retain an attorney and appear in court to defend against the baseless charges.

60. The charges against Ms. Quillen were dismissed on June 3, 2024.

## Defendants Jack, Correia, and Rioux Used Force Against Ms. Quillen That Was Unreasonable Under the Circumstances, and They Lacked Probable Cause for Her Arrest

61. The time from the beginning of the video to Chief Jack's lunge was about 41 seconds.

62. As shown in the video, Ms. Quillen was an individual woman standing in an office lobby surrounded by multiple police officers.

63. Ms. Quillen did not use any force or physical resistance before Chief Jack grabbed her.

64. Ms. Quillen's demeanor was non-threatening. She was exercising her constitutional right to raise a criminal complaint with her Police Department.

65. There was no indication that Ms. Quillen was armed.

66. There was no indication that Ms. Quillen posed an immediate

14

threat to anyone.

67.    The interaction in the police station was not an urgent situation; it did not require a quick response from officers. The officers had time to consider how they should respond to the situation and whether they should employ force against Ms. Quillen.

68.    Ms. Quillen was certainly not advancing on officers; she was standing in a police station lobby attempting to report a complaint. Indeed, it was Chief Jack who escalated the situation by refusing to receive the report and insisting that Ms. Quillen leave the station.

69.    Although Chief Jack warned Ms. Quillen that Officer Rioux would take her to jail if she did not leave, this was a baseless and unconstitutional threat. Ms. Quillen was permitted to be in the public Police Department lobby reporting a criminal complaint.

70.    Further, Chief Jack never warned that he was going to grab Ms. Quillen and throw her to the ground. Chief Jack also gave Ms. Quillen obviously insufficient time—about two seconds—to comply with his direction to leave.

71.    Given the circumstances, no reasonably prudent person would believe that Ms. Quillen had committed or was committing any of the crimes for which she was charged, let alone all of them.

72.    Despite Chief Jack's clearly unreasonable use of force against Ms.

15

Quillen, Defendants Correia and Rioux did not intervene and instead both participated in the excessive force.

### Defendants Misrepresented the Assault in Police Reports, Violated Department Policies, and Continued to Retaliate Against Ms. Quillen

73. In their written reports about the incident, Chief Jack and Officer Rioux omitted key contextual information, provided a misleading narrative of what occurred at the police station, and sometimes lied outright.

74. For example, Chief Jack falsely wrote that Ms. Quillen told him, "take me to jail." The video shows nothing of the sort.

75. Officer Rioux wrote that Ms. Quillen "stood there and did not leave" after Chief Jack threatened to send her to jail, but he failed to mention that Ms. Quillen "stood there and did not leave" for less than two seconds before Chief Jack physically grabbed her.

76. Officer Rioux also claimed that Ms. Quillen "pulled away and would not give us her hands to place behind her back," and that "she was lowered to the floor." But these statements mischaracterize what the video footage shows: the three officers grabbed Ms. Quillen and abruptly threw her on the floor.

77. Additionally, Chief Jack's police report repeatedly described Ms. Quillen as yelling and screaming without acknowledging that Ms. Quillen was talking to him before he yelled "you're not going to tell me anything" and

began unjustifiably escalating the situation.

78.    At the suggestion of the Maine Attorney General's Office, Ms. Quillen contacted Oxford Town Manager Adam Garland to report the officers' unlawful behavior. Town Manager Garland indicated that he would respond to Ms. Quillen's report, but he instead alerted Chief Jack to the report and refused to communicate further with Ms. Quillen.

79.    By refusing to respond to Ms. Quillen's report, Town Manager Garland and Chief Jack violated the Oxford Police Department's purported "Mandatory Policy on Investigation of Criminal Conduct/Misconduct and Complaints against Employees."

80.    That policy provides in part that the department "will accept and document all complaints of employee misconduct." It requires a supervisor to "interview the complainant and complete a Complaint Form" and then "submit the completed Complaint Form directly to the Chief Law Enforcement Officer," who will then "designate each complaint for investigation."

81.    After the investigation, Department policies claim that "the Chief Law Enforcement Officer will review the investigation and will write [the complainant] a letter explaining what has been found out about the matter." Town Manager Garland and Chief Jack did not complete this "mandatory" process after Ms. Quillen contacted the Town about her complaint.

17

82.     In addition to the incident at the police station, members of the Oxford Police Department have displayed animosity toward Ms. Quillen and taken adverse actions against her in other contexts. For example, on June 15, 2023, one or more Defendants called Ms. Quillen's employer to complain that Ms. Quillen had "showed her displeasure" with the police while stuck in traffic. Ms. Quillen was suspended from her job for several days because of the police contacting her employer.

83.     Additionally, Ms. Quillen attended the Oxford Fair on about September 15, 2023. While at the fair, Ms. Quillen saw Candice Jack, Officer Rioux, Officer Brandon Correia (a family member of Sergeant Joseph Correia), and KG. Soon after, multiple other police officers approached Ms. Quillen. The police officers told Ms. Quillen she was not permitted to swear in public. They escorted her out of the fair and told her she was not allowed to return. Ms. Quillen understood that one reason she was targeted for removal from the fair was her attempt to make a report involving Chief Jack's family.

### Legal Claims

### Count I:
**Claim under Section 1983 and the Maine Civil Rights Act against Defendants Jack, Correia, and Rioux for Excessive Force, False Arrest, Malicious Prosecution, and Unlawful Retaliation in Violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 4, 5, and 15 of the Maine Constitution**

84.     The allegations above are realleged.

18

85.    Defendants Jack, Correia, and Rioux used force to effect a seizure when they attacked and arrested Ms. Quillen.

86.    The force that Defendants Jack, Correia, and Rioux used against Ms. Quillen was intentional, excessive, and unreasonable under the circumstances.

87.    Ms. Quillen had not committed a crime, let alone a severe crime, in her attempt to report a complaint to the police. No reasonably prudent person would conclude that Ms. Quillen had committed a crime. Even the crimes with which she was eventually charged—and which were ultimately dismissed—were categorized as Class E, the lowest level of severity under Maine law.

88.    Ms. Quillen did not pose a threat to the Defendants or others, particularly not an immediate threat. Ms. Quillen was an individual person standing in a public office lobby, and she was outnumbered three-to-one by police officers. Defendants Jack, Correia, and Rioux had no reason to believe that Ms. Quillen posed a threat to them or others. As depicted in the video, Ms. Quillen's demeanor was non-threatening and within her constitutional rights.

89.    Nor can it be said that Ms. Quillen "resisted arrest" or "evaded arrest"—Defendants Jack, Correia, and Rioux had no arrest warrant and no probable cause to believe Ms. Quillen had committed a crime, and she did not

physically resist or try to pull away from them.

90.     Defendants Jack, Correia, and Rioux knew or should have known that the force used in arresting Ms. Quillen was excessive and could result in serious physical injury.

91.     Any reasonable officer in the same circumstances would have known that grabbing Ms. Quillen and forcing her to the ground could result in serious physical injury and would be unreasonable given the totality of the circumstances.

92.     The actions of Defendants constitute excessive force in violation of Ms. Quillen's Fourth and Fourteenth Amendment rights.

93.     Further, Defendants Jack, Correia, and Rioux arrested and detained Ms. Quillen without probable cause and without legal process.

94.     The Defendants did not have a warrant for Ms. Quillen's arrest.

95.     No reasonably prudent person would believe that Ms. Quillen had committed or was committing any of the crimes for which she was charged, let alone all of them.

96.     The actions of Defendants constitute false arrest in violation of Ms. Quillen's Fourth and Fourteenth Amendment rights.

97.     As a direct and proximate result of the unlawful actions and omissions of Defendants Jack, Correia, and Rioux, Ms. Quillen experienced a seizure pursuant to legal process. She was forced to submit to the state's

20

authority, appear in court against her will, and follow conditions of release.

98.    The Defendants caused criminal proceedings against Ms. Quillen that were subsequently terminated in Ms. Quillen's favor.

99.    The actions of Defendants constitute malicious prosecution in violation of Ms. Quillen's Fourth and Fourteenth Amendment rights.

100.    Moreover, Ms. Quillen engaged in activity protected by the First Amendment's protections for free speech and the right to petition the government when she contacted the Oxford Police Department to report a complaint and when she attempted to alert the Defendants to Ms. Bashaw's threats.[1]

101.    The Defendants took adverse actions against Ms. Quillen when they forced her to the ground, arrested her, and subsequently displayed animosity toward her.

102.    There is a causal link between the protected activity and the adverse actions. The Defendants knew that Ms. Quillen wanted to report concerns about a family member of Chief Jack, and there was a close temporal connection between Ms. Quillen's attempted complaint and the adverse actions against her.

---

[1] *See, e.g., Entler v. Gregoire*, 872 F.3d 1031, 1043 (9th Cir. 2017) ("[T]he filing of criminal complaints falls within the embrace of the First Amendment."); *Meyer v. Bd. of Cnty. Comm'rs of Harper Cnty.*, 482 F.3d 1232, 1243 n.5 (10th Cir. 2007) ("[T]his case involves the right to present a criminal complaint, which is a form of the right to petition for redress of grievances, and thus one of the most basic of all constitutional rights.").

21

103.   Further, the Defendants directly admitted their retaliatory intent after they arrested Ms. Quillen and responded to her attempt to file a criminal complaint against a family member of Chief Jack by stating, "I don't know who you think you are, talking to the wrong people at the department."

104.   The actions of Defendants constitute retaliation in violation of Ms. Quillen's First and Fourteenth Amendment rights.

105.   The unlawfulness of the conduct of Defendants Jack, Correia, and Rioux was clearly established.

106.   Defendants Jack, Correia, and Rioux further violated the Maine Civil Rights Act, 5 M.R.S. § 4682, by interfering through use of physical force and violence with her constitutional rights, including her rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 4, 5, and 15 of the Maine Constitution, to be free from excessive force, false arrests, and malicious prosecution; to free speech; and to petition the government.

107.   As a direct and proximate result of the unlawful actions and omissions of Defendants Jack, Correia, and Rioux, Ms. Quillen has suffered and will continue to suffer damages including, but not limited to, physical pain and suffering, humiliation and embarrassment, emotional pain and distress, inconvenience, mental anguish, loss of enjoyment of life, and injury to dignity and personal wellbeing.

## Prayer for Relief

Ms. Quillen respectfully requests that this Court:

(a)     Declare that Defendants Jack, Correia, and Rioux violated Plaintiff's civil rights under the United States Constitution, 42 U.S.C. § 1983, the Maine Constitution, and the Maine Civil Rights Act;

(b)     Award Ms. Quillen compensatory and economic damages in amounts to be determined at trial by the jury;

(c)     Award punitive damages against Defendants Jack, Correia, and Rioux in amounts to be determined at trial by the jury;

(d)     Award Ms. Quillen reasonable costs and attorney's fees;

(e)     Award Ms. Quillen prejudgment interest; and

(a)     Award such further relief as is deemed appropriate.

## Count II:
### Section 1983 Claim against Defendant Town of Oxford for Municipal Liability

108.   The allegations above are realleged.

109.   The Town of Oxford is liable to Ms. Quillen under 42 U.S.C. § 1983 for the above violations of her rights under the First, Fourth, and Fourteenth Amendments because the violations were caused by a policy, custom, or practice of the Town of Oxford.

110.   As the responsible decisionmaker and policymaker for the Town of Oxford Police Department, Chief Jack both committed unconstitutional

23

acts as a municipal employee and directed and ratified the unconstitutional conduct of other municipal employees, thus rendering the Town liable for this unconstitutional conduct.

111. As the responsible decisionmaker and policymaker for the Town of Oxford, Town Manager Adam Garland further ratified the unconstitutional conduct of Chief Jack and the other police officers by refusing to take any action in response to Ms. Quillen's report of wrongdoing and instead simply alerting Chief Jack to the fact that Ms. Quillen had complained about him.

112. The unlawfulness of the conduct of the Town of Oxford was clearly established.

113. As a direct and proximate result of the unlawful actions and omissions of the Town of Oxford, Ms. Quillen has suffered and will continue to suffer damages including, but not limited to, physical pain and suffering, humiliation and embarrassment, emotional pain and distress, inconvenience, mental anguish, loss of enjoyment of life, and injury to dignity and personal wellbeing.

### Prayer for Relief

Ms. Quillen respectfully requests that this Court:

(a) Declare that Defendant Town of Oxford violated Plaintiff's civil rights under the United States Constitution and 42 U.S.C. § 1983;

(b)   Award Ms. Quillen compensatory and economic damages in amounts to be determined at trial by the jury;

(c)   Award Ms. Quillen reasonable costs and attorney's fees;

(d)   Award Ms. Quillen prejudgment interest; and

(b)   Award such further relief as is deemed appropriate.

Respectfully submitted,

Date: May 8, 2026                 /s/ Braden A. Beard
                                  Braden A. Beard
                                  Johnson, Webbert & Beard, LLP
                                  1 Bowdoin Island Mill, Ste. 300
                                  Topsham, Maine 04086
                                  Telephone: (207) 623-5110
                                  bbeard@work.law

Date: May 8, 2026                 /s/ Olivia R. Blom
                                  Olivia R. Blom
                                  Johnson, Webbert & Beard, LLP
                                  1 Bowdoin Island Mill, Ste. 300
                                  Topsham, Maine 04086
                                  Telephone: (207) 623-5110
                                  oblom@work.law

                                  *Attorneys for Plaintiff*

25